IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| ANTHONY D. HOLMES, ) | Civil Action No. 3:08-1829-CMC-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, COMMISSIONER ) | |
| OF THE SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

On June 12, 2003, Plaintiff applied for SSI, and he applied for DIB on June 30, 2003. Plaintiff's applications were denied initially and on reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). After a hearing held June 2, 2005, at which Plaintiff appeared and testified, the ALJ issued a decision dated July 19, 2005 denying benefits and finding that Plaintiff was not disabled because he did not have a "severe" impairment. The Appeals Council denied Plaintiff's review and he filed an action in this Court on June 28, 2006 (Civil Action No. 06:1910-CMC-JRM). The Commissioner filed a motion to remand pursuant to sentence four of 42 U.S.C. § 405(g). Plaintiff consented to remand, and on February 5, 2007, the undersigned ordered

that the Commissioner's decision be reversed and the case be remanded to the Commissioner for further proceedings.[1]

The Appeals Council issued an order of remand instructing the ALJ (the case was assigned to a different ALJ) to provide Plaintiff with the opportunity to update the medical records, give further consideration to the severity of Plaintiff's impairments, evaluate Plaintiff's impairments in accordance with 20 C.F.R. §§ 404.1520a and 416.920a, and further evaluate Plaintiff's credibility. The order instructed the ALJ to, if necessary, obtain evidence from a vocational expert ("VE") to clarify the effect of Plaintiff's impairments on the occupational base. Specifically, the Council noted the ALJ did not provide a sufficient evaluation of the examining source opinions of Robert Brabham, Ph.D., and Lawrence Bergmann, Ph.D. Tr. 60-66.

A supplemental hearing was held on July 12, 2007, at which Plaintiff appeared and testified. On September 14, 2007, the ALJ issued a decision denying benefits. The ALJ, after hearing the testimony of a VE, concluded that work exists in the national economy which Plaintiff could perform.

Plaintiff was forty-one years old at the time he alleges he became disabled and forty-six years old at the time he was last insured for DIB benefits. He has a high school education and past relevant work as a sheet metal mechanic and milk shipping and receiving clerk. Plaintiff alleges disability since April 30, 2002, due to lumbar disc bulges and depression.

The ALJ found (Tr. 21-29):

1. The claimant meets the insured status requirements of the Social Security Act through December 21, 2007.

---

[1] The Commissioner was instructed to hold a de novo hearing and issue a new decision. In doing so, the ALJ was directed to reassess whether Plaintiff had a severe impairment and to reassess the credibility of Plaintiff's subjective complaints. See Tr. 58.

2.  The claimant has not engaged in substantial gainful activity since April 30, 2002, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: degenerative disc disease and residuals status post an injury to the lumbar spine and a pain disorder associated with psychological factors and a general medical condition (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.9209(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work with the following restrictions: no lifting and or carrying over 20 pounds occasionally and 10 pounds frequently; no standing and/or walking over 6 hours in an 8-hour workday; only occasional stooping, twisting, crouching, kneeling, and climbing of stairs or ramps; no climbing of ladders or scaffolds; no use of foot pedals or other controls with either lower extremity; and avoidance of hazards such as unprotected heights and dangerous machinery.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on March 13, 1961 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

On March 10, 2008, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on May 8, 2008.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence.[2] Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## MEDICAL EVIDENCE

Plaintiff hurt his back at work on April 30, 2002. Approximately one week later, he was examined by Dr. John Savage, an orthopedist. Dr. Savage diagnosed Plaintiff with an acute lumbar strain with possible herniated disc at L5-S1. He indicated that Plaintiff was not able to return to work at that time because Plaintiff stated that there was no light duty available. Tr. 153. An MRI on June

---

[2]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

4

12, 2002 revealed a "significant" posterior protrusion at L5-S1, a minor posterior broad based bulging at L3-4 and L4-5, and disc desiccation at L4-5 and L5-S1. Tr. 147-148. On June 19, 2002, Dr. Savage noted that the MRI showed "left nerve root impingement, ruptured disc at L5-S1 on the left side." Examination revealed positive straight leg raise testing and Achilles stretch, with absence of reflex on the left side. Dr. Savage suggested that Plaintiff might eventually require surgery and referred Plaintiff to Dr. Richard Epter of the Augusta Pain Center for pain management therapy, including epidural steroid injections and medication. Tr. 152.

Dr. Epter treated Plaintiff from July 2002 to March 2004. He performed epidural steroid injections and facet nerve blocks, prescribed various pain medications, and recommended physical therapy. Tr. 156-173, 183-192.

On February 14, 2003, Dr. James K. Aymond, an orthopaedist, performed a consultative examination. He diagnosed Plaintiff with discogenic pain syndrome at the L4-5 and L5-S1 levels. Dr. Aymond reported that Plaintiff did not have any significant relief of his symptoms despite his numerous steroid injections and opined that a two-level disc fusion at L4-5 and L5-S1 would be a viable treatment option for Plaintiff's injuries. He further opined, however, that he did "not believe that surgery will bring the patient back to a pre[-]accident status as he will likely have limitations and permanent impairment from this problem with his lower back with or without surgery." He also opined that Plaintiff was totally disabled at that point. Tr. 154-155.

On March 29, 2004, Dr. Robert E. Brabham, a psychologist, examined Plaintiff. He interviewed Plaintiff and conducted psychological testing. Dr. Brabham diagnosed Plaintiff with a pain disorder, a depressive disorder, and a generalized anxiety disorder. He opined that, with regard

5

to the vocational implications of Plaintiff's back injury, Plaintiff was "unable to engage in full-time, competitive employment" and was totally disabled as a result of his back injury. Tr. 178-182.

On December 4, 2004, Plaintiff was examined by Dr. Lawrence H. Bergmann, a psychologist with Post Trauma Resources, in order to determine if Plaintiff had developed any psychological consequences as a result of his work-related injuries. Tr. 193-197. Dr. Bergmann interviewed Plaintiff and conducted psychometric testing. He diagnosed Plaintiff with "Adjustment Disorder with Depressed Mood and Pain Disorder Associated with Both Psychological Factors and a General Medical Condition." Tr. 196-197. Dr. Bergmann opined that Plaintiff would benefit from psychotherapy and the use of psychotropic medication. Tr. 197.

Subsequent to the first hearing, Plaintiff submitted medical records indicating that he had been treated since August 24, 2004 at the Veterans Administration Medical Center ("VAMC") in Augusta. Plaintiff's back impairment was treated conservatively with medication. Tr. 198-226. On October 12, 2005, it was noted that Plaintiff described his back pain as aching, constant, and chronic. On January 12, 2007, Plaintiff reported that he was still experiencing chronic low back pain. Tr. 200, 209.

## **HEARING TESTIMONY**

At the first (June 2005) hearing, Plaintiff responded "yes" to his attorney's question of whether he was "put out of work" by Dr. Savage shortly after the accident. Tr. 293. He stated that he suffered from back pain on a daily basis and also experienced leg pain if he stood or sat for long periods of time. Tr. 295. Plaintiff testified that he experienced pain, numbness, and weakness in his legs, and was only able to obtain relief by lying down and elevating his heel. He used ice packs and heating pads for temporary relief. Plaintiff reported that pain medication provided him with some

relief, but made him drowsy to the extent he could not take the medication if he had to go anywhere. Tr. 296-297.

Additionally, Plaintiff stated that his legs became numb if he sat for long periods, such as when he drove to the hearing. Tr. 297. He also reported that he was only capable of lifting such things as a gallon of milk, he was unable to take trash out of a trash can, and physical activities of any nature made his pain worse. Tr. 298.

At the first hearing, Plaintiff testified that he usually woke up at 6:00 a.m., took his son to school, and laid down with his feet elevated after he returned home. Tr. 298. He usually would lie down three to four times between early in the morning and dinner time, could not sit or stand in one position very long, and was only able to perform activities around his house for short periods of time. Plaintiff stated he previously worked as a pastor in his church, but gave it up because he could no longer keep up with the activities and duties of the job. Tr. 300. He stated that his symptoms and limitations had not improved, despite extensive medical treatment, since his injury in April 2002. Tr. 295, 300.

At the second (July 2007) hearing, Plaintiff testified that his symptoms were essentially unchanged since his first hearing. The only prescription medication he was taking for pain was Ibuprofen. Tr. 273. He stated that his pain was worse with activity, such as bending. Plaintiff also testified that the limitations caused by his pain remained the same since his first hearing. Tr. 268-269.

## **DISCUSSION**

On April 13, 2009, Plaintiff filed a brief in which he asserts that this court should reverse the ALJ's decision to deny benefits and remand the case to the Commissioner for an award of benefits.

Specifically, he argues that: (1) the ALJ's decision was not supported by substantial evidence; (2) the ALJ failed to give proper weight to the opinions of examining psychologist Dr. Brabham as to Plaintiff's residual functional capacity ("RFC"); (3) the ALJ erred by relying on VE testimony that was not consistent with the Dictionary of Occupational Titles ("DOT"); and (4) the Commissioner failed to carry his burden at step five[3] of the sequential evaluation process of proving that there are a significant number of jobs in the national economy that Plaintiff (despite his impairments) can perform.

On June 16, 2009, the Commissioner filed a motion for entry of judgment with an order of remand pursuant to sentence four of 42 U.S.C. § 405(g). The Commissioner contends that this action should be remanded to hold a de novo hearing and issue a new decision regarding Plaintiff's eligibility for DIB and SSI. The Commissioner provides that upon remand the Appeals Council will direct the ALJ to reevaluate the severity of Plaintiff's impairments, direct the ALJ to evaluate the opinions of Dr. Brabham, and direct the ALJ to elicit VE testimony to clarify the effect of Plaintiff's limitations on his occupational base with hypothetical questions accurately reflecting the specific capacity/limitations established by the record as a whole.

---

[3]In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id. The burden of proof and production rests on the claimant during the first four steps, but shifts to the ALJ on the fifth step. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

On July 13, 2009, Plaintiff filed a memorandum in opposition to the Commissioner's motion for remand and he filed a motion for summary judgment. Plaintiff argues that this action should not be remanded for further proceedings, but instead it should be reversed with an award of benefits.

The parties agree that the ALJ's decision should not be upheld. The question presented is whether this action should be remanded to the Commissioner for further proceedings or reversed for an award of benefits.

"Where the [Commissioner's] determination is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the case for a rehearing' " pursuant to Section 405(g). Vitek v. Finch, 438 F.2d 1157, 1158 (4th Cir.1971). An award of benefits is more appropriate when further proceedings would not serve any useful purpose. See Coffman v. Bowen, 829 F.2d 514, 519 (4th Cir.1987); Kornock v. Harris, 648 F.2d 525, 527 (9th Cir.1985). In addition, an award of benefits is appropriate when substantial evidence on the record as a whole indicates that the clamant is disabled, and the weight of the evidence indicates that a remand would only delay the receipt of benefits while serving no useful purpose. Parsons v. Heckler, 739 F.2d 1334, 1341 (8th Cir.1984); Tennant v. Schweiker, 682 F.2d 707, 710 (8th Cir.1982) Also reversal is appropriate when the Commissioner has had an opportunity to develop the record on an outcome-determinative issue and has failed to produce substantial evidence, Broadbent v. Harris, 698 F.2d 407, 414 (10th Cir.1983), Tennant, 682 F.2d at 710-711; or where "there is not the slightest uncertainty as to the outcome" and the remand "would be an idle and useless formality." NLRB v. Wyman-Gordon Company, 394 U.S. 759, 766 n. 6 (1969); Barry v. Bowen, 862 F.2d 869 (4th Cir. 1988)[Table]. On the other hand,

remand is appropriate "where additional administrative proceedings could remedy defects...." Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989).

Plaintiff argues that where the Commissioner fails to carry his burden at step five and the record does not show substantial evidence supporting the denial of benefits under the correct legal standard, reversal rather than remand is appropriate. He also argues that an award of benefits is appropriate here because more than six years have passed since he applied for benefits and the Commissioner, who has been given two chances to properly consider his claims, should not be allowed to continue to keep trying until he gets it right. The Commissioner contends that deference cautions in favor of remand for further proceedings because the evidence in this case does not overwhelmingly support a finding of disability. Additionally, the Commissioner argues that the fact that Plaintiff applied for benefits over six years ago does not in itself justify reversal for an award of benefits, as other courts in similar actions have remanded for further proceedings.

Plaintiff, citing Miller v. Callahan, 964 F.Supp. 939 (D.Md. 1997); Coffman v. Bowen, 829 F.2d 514 (4th Cir. 1987); and Allen v. Bown, 881 F.2d 37 (3rd Cir. 1989), argues that an award of benefits is the appropriate action where the Commissioner fails to carry his burden at step five of the sequential evaluation process. These cases, however, are distinguishable. The VE in Miller v. Callahan testified that if the claimant was unable to control his drinking he could not perform even a small range of sedentary jobs in the national economy. The District Court of Maryland found (in contrast to the ALJ) that substantial evidence supported a finding that the claimant could not control his use of alcohol. The record did not show substantial evidence supporting the denial of benefits under the correct legal standard and reopening would serve no purpose. Thus, the court found that reversal with an award of benefits was appropriate. See Miller, 964 F.Supp. at 955-956. In Coffman,

over six years had elapsed since the claimant filed for disability benefits, over five years had elapsed since he was wrongfully denied benefits, he had triple bypass heart surgery, and he committed suicide. The Fourth Circuit awarded benefits as it was convinced "that if the matter were to be remanded to the [Commisioner] for redetermination and the [Commissioner] were to conclude again that [the claimant] was not disabled, his decision would not withstand judicial review. " Coffman, 829 F.2d at 519. In Allen, the Third Circuit Court of Appeals found that the record, including reports of the claimant's treating physician, showed that the claimant was only able to perform sedentary work and had no sedentary skills. Under the medical-vocational guidelines, a person of Allen's age and education who was restricted to sedentary work and had no transferable skills would be found disabled. The Third Circuit reversed for an award of benefits noting:

> Where as here the claimant established a prima facia case of entitlement, the record was fully developed, and there is no good cause for the [Commissioner's] failure to adduce all the relevant evidence in the prior proceeding, we see no reason to remand for further fact finding.

Allen, 881 F.2d at 44.

Here, however, there remain questions of fact as to Plaintiff's RFC and whether there are a significant number of jobs in the national economy that Plaintiff can perform despite his impairments. Unlike many of the cases reversed for an award of benefits, in this action no treating physician has found that Plaintiff was unable to perform substantial gainful activity. Although Dr. Savage found that Plaintiff had L5-S1 tenderness, a limited ability to bend, and positive straight leg raise testing, he also found that Plaintiff could heel-toe walk, had normal reflexes, and had intact sensation. Tr. 152-153. Dr. Savage referred Plaintiff to Dr. Epter for pain management and did not treat Plaintiff again after January 2003. See Tr. 151. Plaintiff reported improvement in pain following a lumbar epidural steroid injection in July 2002 (Tr. 170-171), some relief of pain

11

following lumbar intrarticular facet injections in August 2002 (Tr. 168-169), some relief of pain following a lumbar medial branch nerve block injection in September 2002 (Tr. 167-168), and the ability to do a lot more following a lumbar epidural steroid injection in November 2002 (Tr. 163-164). In December 2002, Dr. Epter noted that Plaintiff was "doing rather well" and his low back pain was "well-controlled" with medication. Tr. 163. From August 2004 to March 2007, Plaintiff's back pain was treated conservatively with medication by physicians at the VAMC. See Tr. 198-226.

Plaintiff did not seek any medical care from January 2003 until August 2003 (other than the consultative examination in February 2003 by Dr. Aymond). Dr. Aymond opined in February 2003 that Plaintiff was "totally disabled" (Tr. 154-155), but only saw Plaintiff once before rendering his opinion. His opinion is not dispositive. See 20 C.F.R. § 404.1527(e); SSR 96-5p; see also Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027 (10th Cir. 1994)(physician's opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"); Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)(statements that a claimant could not be gainfully employed are not medical opinions, but opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner).

Dr. Brabham opined that Plaintiff was disabled, but he also only examined Plaintiff on one occasion. Plaintiff did not receive any ongoing mental health treatment or psychological counseling, there is no indication that he ever required medications for his mental impairments, and screening at the VAMC on January 12, 2007 was negative for depression (Tr. 200).

After the conclusion of his worker's compensation case,[4] Plaintiff only sought care from the VAMC, which consisted of checkups approximately every six months. Despite his complaints of disabling pain, the only prescription medication he reported at the second hearing before the ALJ that his only medication was Ibuprofen 800 (Tr. 144). See, e.g., Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984) (expressing approval of ALJ's consideration of a plaintiff's lack of strong pain medication); see also 20 C.F.R. § 404.1529(c)(3)(listing "other evidence" to be considered when "determining the extent to which [claimant's] symptoms limit [claimant's] capacity for work," including, "(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms[.]").

Plaintiff also argues that this case should not be remanded for further proceedings because the case has been pending for over six years and the Commissioner should not be allowed to take multiple bites at the apple. The cases cited by Plaintiff, are distinguishable from the present action. Plaintiff cites Seavy v. Barnhart, 276 F.3d 1 (1st Cir. 2001)[5] for the proposition that the Commissioner is not entitled to endless bites of the apple. Although the Court of Appeals for the First Circuit in Seavy noted that administrative deference did not entitle the Commissioner "to endless opportunities to get it right" (id. at 12), it held that "ordinarily the court can order the agency to provide the relief it denied only in the unusual case in which the underlying facts and law are such

---

[4]Plaintiff settled his worker's compensation claim in March 2005 for $94,000. See Tr. 301-302.

[5]In Seavy, the ALJ did not make any findings on a key issue - whether Seavy had a significant nonexertional impairment. The ALJ found that Seavy was not disabled under the medical-vocational guidelines. Thus, there was no evidence introduced on the issue of whether Seavy could perform a significant number of light or sedentary jobs if he had combined exertional and nonexertional impairments. See Seavy, 276 F.3d at 11.

that the agency has no discretion to act in any manner other than to award or to deny benefits." Id. at 11. In Ozbun v. Callahan, 968 F.Supp. 478 (S.D. Iowa),[6] the court reversed the action for an award of benefits because it was convinced that Ozbun could not return to any past relevant work and the Commissioner failed (despite two opportunities) to meet his burden of proving that Ozbun had the RFC for other work. Id. at 480-481. Plaintiff also cites to Aguiar v. Apfel, 99 F.Supp.2d 130 (D.Mass. 2000), where the court found that reversal with an award of benefits was necessary as the ALJ had a full and fair opportunity to examine the claimant "about her complaints of pain, sufficiently determine her daily activities, present contrary medical evidence, and obtain a medically determined RFC[,]" but failed to do so at two separate hearings. Significantly, the court found that there was "ample support on the record for a finding of disability." Id. at 140.

Here, as discussed above, there are questions as to whether a finding of disability is warranted. Thus, it is recommended that this action be remanded for further proceedings. See Woody v. Astrue, 2009 WL 799657, *29 (W.D.Va. March 24, 2009)(unpublished)(reluctantly remanding case to Commission for further consideration, even though the case had been pending for more than eight years and had been remanded twice, because "without further consideration of [the claimant's] physical and mental limitations, the court is not confident that a finding of disability is warranted");

---

[6]The action was previously remanded because the ALJ found no severe impairments. The ALJ was directed to determine whether or not there were a significant number of unskilled sedentary jobs in the national economy which Plaintiff was capable of performing despite his limitations. Despite this, the ALJ did not call upon the VE to provide testimony at the hearing. Ozbun, 968 F.Supp. at 480-481.

14

Timmerman v. Commissioner of Social Security, 2009 WL 500604 (D.S.C. Feb. 26, 2009)(unpublished)(finding that remand for further proceedings was appropriate because deference to the agency's determination cautioned in favor of remand, the claimant's own court submissions asked that the case be remanded for consideration of her physicians' opinions, and evidence in the record did not overwhelming support a finding of disability).

## **CONCLUSION**

The Commissioner's decision is not supported by substantial evidence. It is recommended that Defendant's motion to remand (Doc. 28) be **granted**. It is also recommended that Plaintiff's motion for summary judgment (Doc. 35) be **denied**.

This action should be remanded to the Commissioner to hold a de novo hearing and as expeditiously as possible issue a new decision regarding Plaintiff's eligibility for DIB and SSI. The ALJ should be directed to reevaluate the severity of Plaintiff's complaints, evaluate the opinions of examining psychologist Dr. Brabham, evaluate Plaintiff's RFC, and elicit VE testimony to clarify the effect of Plaintiff's limitations on his occupational base (with hypothetical questions accurately reflecting the specific capacity/limitations established by the record as a whole).

It is, therefore, RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey
United States Magistrate Judge

January 27, 2010
Columbia, South Carolina